Leave to file GRANTED

*[signature]* 3/15/2012
Beryl A. Howell         Date
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Media Products, Inc. DBA Devil's Film     Civil Action No. 11-CV-02299-BAH

    Plaintiff,

vs.                                       **MOTION TO QUASH OR MODIFY SUBPOENA AND SEVER DEFENDANTS**

DOES 1-31,

    Defendants.

_____/

**MOTION TO QUASH OR MODIFY SUBPOENA
AND SEVER DEFENDANTS**

i

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................. iii

Introduction ............................................................................................................................... 1

Facts as Alleged by Plaintiff ..................................................................................................... 3

Legal Argument ........................................................................................................................ 4

    I.        The Subpoena Should Be Quashed Because Plaintiff Has Not Established That This Court Has Personal Jurisdiction Over Defendant .......................................... 4

            A.        Plaintiff Has Not Met Its Burden of Establishing Personal Jurisdiction .. 4

            B.        Plaintiff Cannot Engage In Discovery to Find Jurisdictional Facts ......... 6

    II.       The Subpoena Should Be Quashed Because It Violates Defendant's First Amendment Right to Anonymous Speech .......................................................... 7

            A.        The First Amendment Protects Defendant's Right to Engage in Anonymous Speech ............................................................................... 7

            B.        Plaintiff's Subpoena Cannot Survive the Dendrite Test .......................... 9

            C.        Plaintiff's Subpoena Cannot Survive the Sony Test .............................. 11

    III.      John Does 2-31 Should Be Severed for Misjoinder ........................................... 12

Conclusion .............................................................................................................................. 14

# TABLE OF AUTHORITIES

## Cases

*ALS Scan v. Digital Service Consultants*, 293 F.3d 707 (4th Cir. 2002)

*BMG Music v. Does 1-203*, 2004 U.S. Dist. LEXIS 8457, 2004 WL 953888
(E.D. Pa. Apr. 2, 2004)

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)

*Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332 (D.D.C. 2011)

*CP Productions, Inc. v. Does 1-300*, 2011 U.S. Dist. LEXIS 113013
(N.D. Ill. February 24, 2011)

*CP Productions, Inc. v. Does 1-300*, Statement of March 2, 2011 (available at http://
law.justia.com/cases/federal/district-courts/illinois/ilndce/1:2010cv06255/248010/33/)

*Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756 (N.J. App. Div. 2001)

*Diabolic Video Productions, Inc v. Does 1-2099*, 2011 U.S. Dist. LEXIS 58351;
Copy. L. Rep. (CCH) P30,093 (N.D. Cal. May 31, 2011)

*Digital Sin, Inc. v. Doe*, 2011 U.S. Dist. LEXIS 128033 (N.D. Cal. Nov. 4, 2011)

*Disparte v. Corporate Exec. Bd.*, 223 F.R.D. 7 (D.D.C. 2004)

*Doe v. 2themart.com*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001)

*Elektra Entm't Group, Inc. v. Does 1-9*, 2004 U.S. Dist. LEXIS 23560, 2004 WL 2095581
(S.D.N.Y. Sept. 7, 2004)

*Grandbouche v. Clancy*, 825 F.2d 1463 (10th Cir. 1987)

*In re Verizon Internet Servs. Inc.*, 257 F. Supp. 2d 244 (D.D.C. 2003)

*In re Verizon Internet Servs. Inc.*, 351 F.3d 1229 (D.C. Cir. 2003)

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)

*Interscope Records v. Does*, 558 F. Supp. 2d 1176 (D. Kan. 2008)

*Interscope Records v. Does 1-25*, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004)

*IO Group, Inc. v. Does 1-435*, 2011 U.S. Dist. LEXIS 73837 (N.D. Cal. July 8, 2011)

*Jennings v. AC Hydraulic A/S*, 383 F.3d 546 (7th Cir. 2004)

*LaFace Records, LLC v. Does 1-38*, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008)

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995)

*New York Times v. Sullivan*, 376 U.S. 254 (1964)

*Pacific Century International LTD v. Does 1-101*, 2011 U.S. Dist. LEXIS 73837 (N.D. Cal. July 8, 2011)

*Reno v. ACLU*, 521 U.S. 844 (1997)

*Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002)

*Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977)

*Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004)

*VPR Internationale vs. Does 1-1017*, 2011 U.S. Dist. LEXIS 64656 (C.D. Ill. April 29, 2011)

*W. Coast Prods. v. Doe*, 275 F.R.D. 9, 13 (D.D.C. 2011)

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)

## **Court Rules**

Fed. R. Civ. P. 20

Fed. R. Civ. P. 21

Fed. R. Civ. P. 26

Fed. R. Civ. P. 45

## INTRODUCTION

Plaintiff filed this action alleging that 31 John Doe Defendants infringed on its copyrighted work. Plaintiff alleges that the various John Doe defendants, including myself, a John Doe identified by the IP address 96.255.163.254, ("Defendant"), participated in acts of copyright infringement of a pornographic film.[1] As this memorandum of law will show, Plaintiff's allegations are too unreliable to justify identifying Defendant, who has a First Amendment right to anonymous speech. Further, Plaintiff's subpoena should be quashed because this Court lacks personal jurisdiction over Defendant. Finally, Defendant moves for the severance of Does 2-31 because the John Does have been improperly joined for Plaintiff's own convenience. In short, Defendant respectfully asks this Court not to indulge Plaintiff in what amounts to a fishing expedition.

Mass lawsuits alleging copyright infringement by way of BitTorrent are designed primarily to extract settlements from their hundreds of targets, earning the plaintiffs and their law firms the label of "copyright trolls."[2] In recent years, BitTorrent litigation has shifted to focus on allegations of infringement of pornographic films, which are inherently more embarrassing, providing ample motivation for defendants to settle once their identities are revealed.[3] In their crusade to sue as many hapless individuals as possible while keeping court fees to a minimum, plaintiffs disregarded the well-established rules of joinder, personal jurisdiction, and discovery in their mass lawsuits alleging copyright infringement through BitTorrent. For example, these lawsuits at one point included over twenty-thousand defendants

---

[1] Due to the need to protect Defendant's identity, it is necessary to file this motion anonymously.
[2] *See, e.g.,* "Copyright Trolls," *Electronic Frontier Foundation*, https://www.eff.org/issues/copyright-trolls; "Copyright troll," *Wikipedia*, http://en.wikipedia.org/wiki/Copyright_troll.
[3] "The motivation behind these cases appears to be to leverage the risk of embarrassment associated with pornography to coerce settlement payments despite serious problems with the underlying claims." "Copyright Trolls," *Electronic Frontier Foundation*, https://www.eff.org/issues/copyright-trolls.

1

in the Northern District of California alone. In one such mass lawsuit in Illinois, the court noted before dismissal:

> [I]f the 300 unnamed defendants have in fact infringed any copyrights (something that this court will assume to be the case, given the Complaint's allegations that so state), each of those infringements was separate and apart from the others. No predicate has been shown for thus combining 300 separate actions on the cheap – if CP had sued the 300 claimed infringers separately for their discrete infringements, the filing fees alone would have aggregated $105,000 rather than $350.

*CP Productions, Inc. v. Does 1-300*, 2011 U.S. Dist. LEXIS 113013, *2-3 (N.D. Ill. February 24, 2011). District Judge Milton Shadur wrote about one plaintiff's abuse of the litigation system "in more than one way" with its "ill-considered" lawsuit:

> This Court has received still another motion by a "Doe" defendant to quash a subpoena in this ill-considered lawsuit filed by CP Productions, Inc. ("CP") against no fewer than 300 unidentified "Doe" defendants – this one seeking the nullification of a February 11, 2011 subpoena issued to Comcast Communications, LLC. This Court's February 24, 2011 memorandum opinion and order has already sounded the death knell for this action, which has abused the litigation system in more than one way. But because the aggrieved Doe defendants continue to come out of the woodwork with motions to quash, indicating an unawareness of this Court's dismissal of this action, 1 CP"s counsel is ordered to appear in court on March 9, 2011 at 9:00 a.m. Counsel will be expected to discuss what steps should be taken to apprise all of the targeted "Doe" defendants that they will not be subject to any further trouble or expense as a result of this ill-fated (as well as ill-considered) lawsuit.

*CP Productions, Inc. v. Does 1-300*, Statement of March 2, 2011 (available at http://law.justia.com/cases/federal/district-courts/illinois/ilndce/1:2010cv06255/248010/33/).

In another BitTorrent case in Illinois, District Judge Harold A. Baker writes in denying certification for interlocutory review of a previously-denied motion for expedited discovery:

> The court has no jurisdiction over any of the Does at this time; the imprimatur of this court will not be used to advance a "fishing expedition by means of a perversion of the purpose and intent" of class actions.

*VPR Internationale vs. Does 1-1017*, 2011 U.S. Dist. LEXIS 64656 (C.D. Ill. April 29, 2011) (quoting the court's earlier order denying expedited discovery). Having been

2

rejected by the federal district courts in California and Illinois, *inter alia*, the "copyright trolls" now forum-shop for a district that will allow them to engage in fishing expeditions.

## FACTS AS ALLEGED IN PLAINTIFF'S COMPLAINT

Plaintiff Media Products, Inc. DBA Devil's Film ("Plaintiff") alleges that it is the owner of a copyrighted work. A Google search for the company in question reveals that it is a pornographic film studio.[4] Plaintiff alleges that John Does #1-31 have infringed on its copyright by illegally downloading and/or distributing a movie.

The BitTorrent protocol is a peer-to-peer downloading program that allows groups of users to download and upload data from each other. Multiple BitTorrent users exchange pieces of information in what is known as a "swarm."

Plaintiff conclusorily alleges that each of the John Doe Defendants distributed Plaintiff's work to others. In support of this allegation, Plaintiff offers only a list of internet protocol ("IP") addresses, listed by internet service provider ("ISP") and dates upon which infringing activity was allegedly observed. Plaintiff does not identify the person or persons who observed the alleged infringing activity, nor does Plaintiff explain how the alleged infringing activity was observed. Armed with this information, Plaintiff asserts that information obtained in discovery will lead to the identification of each Defendant's true name and permit the Plaintiff to amend this Complaint to state the same. To this end, Plaintiff has issued a Subpoena to Verizon Internet Services, Defendant's ISP, requesting the disclosure of Defendant's identifying information.

---

[4] See Google, http://www.google.com/#hl=en&output=search&q=%22devil's+film%22 (note that the results of this search are obviously not safe to open in a courtroom or work environment)

3

# LEGAL ARGUMENT

I. **THE SUBPOENA SHOULD BE QUASHED BECAUSE PLAINTIFF HAS NOT ESTABLISHED THAT THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT.**

### A. Plaintiff Has Not Met Its Burden of Establishing Personal Jurisdiction

First, Plaintiff's subpoena should be quashed because Plaintiff has not established that this Court has personal jurisdiction over Defendant, as required by the Due Process Clause of the Fourteenth Amendment. Rule 26 of the Federal Rules of Civil Procedure requires parties to confer before discovery may be taken, with the exception that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). Because Plaintiff has not established personal jurisdiction over Defendant, nor the other Doe Defendants, Plaintiff has not shown good cause why early discovery should be granted. Plaintiff's theory in a nutshell is that because each John Doe Defendant allegedly engaged in file-sharing over the internet, each and every John Doe Defendant is subject to personal jurisdiction in this District. However, such a theory of universal personal jurisdiction is antithetical to constitutional principles of fairness and due process.

Under well-established principles of personal jurisdiction, Plaintiff has not met and cannot meet its burden to establish that this Court has personal jurisdiction over Defendant, nor the majority of the other John Doe Defendants. The Due Process Clause imposes on every plaintiff the burden of establishing personal jurisdiction as a fundamental matter of fairness, recognizing that no defendant should be forced to have his rights and obligations determined in a jurisdiction with which he has had no contact. These requirements allow "potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Accordingly, the Plaintiff bears the burden of pleading facts sufficient to support the Court's exercise of personal jurisdiction over the Defendants. *See, e.g., Edmond v. United States Postal Serv. Gen. Counsel*, 949 F.2d 415, 424 (D.C. Cir. 1991). Under the Due Process Clause, a plaintiff must demonstrate that: (1) the non-resident "has 'minimum contacts' with

the forum" and (2) "requir[ing] the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-77 (1985). Plaintiff has not met this burden.

To the extent that Plaintiff claims personal jurisdiction based on the interstate transmission of data via a small number of John Does who do reside in the District of Columbia, courts have long rejected such theories of effective universal jurisdiction. As the Fourth Circuit explained in *ALS Scan v. Digital Service Consultants*, 293 F.3d 707 (4th Cir. 2002):

> The argument could . . . be made that the Internet's electronic signals are surrogates for the person and that Internet users conceptually enter a State to the extent that they send their electronic signals into the State, establishing those minimum contacts sufficient to subject the sending person to personal jurisdiction in the State where the signals are received. .. But if that broad interpretation of minimum contacts were adopted, State jurisdiction over persons would be universal, and notions of limited State sovereignty and personal jurisdiction would be eviscerated.

*Id.* at 712-713 (citations omitted). Accordingly, the court limited the exercise of personal jurisdiction based on Internet usage to situations where the defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Id.* at 714.

Under this standard, which has been echoed by other courts, "a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received." *Id.*; *see also Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 (7th Cir. 2004) ("Premising personal jurisdiction on the maintenance of a website, without requiring some level of 'interactivity' between the defendant and consumers in the forum state, would create almost universal personal jurisdiction because of the virtually unlimited accessibility of websites across the country."); *Revell v. Lidov*, 317 F.3d 467, 475-76 (5th Cir. 2002) ("The defendant must be chargeable with knowledge of the forum at which his conduct is directed in order to reasonably anticipate being haled into court in that forum.").

5

In the immediate case, even assuming that each of the Defendants knew that they were infringing a copyright of Media Products, there is no evidence that Media Products has any connection to, nor, if such a connection does exist, that Defendant nor any of the other Does were aware of it. Consequently, Plaintiff has not made a prima facie showing that any of the Defendants had any idea that Plaintiff Media Products, Inc., would suffer any harm in the District of Columbia.

### B. Plaintiff Cannot Engage In Discovery to Find Jurisdictional Facts

The Court should not allow Plaintiff early discovery to seek jurisdictional facts. Plaintiff's failure to meet its burden of showing personal jurisdiction is to be determined before discovery is issued, not after.

In order to obtain discovery on personal jurisdiction, a plaintiff must first make a "preliminary showing of jurisdiction." *See Ticketreserve, Inc. v. Viagogo, Inc.*, 656 F. Supp. 2d 775, 782 (N.D. Ill. 2009) ("At minimum, the plaintiff must establish a prima facie showing of personal jurisdiction before discovery will be permitted."); *accord Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000). When, as here, the plaintiff offers only speculation of jurisdiction, it is well within the Court's discretion to deny early discovery requests, as such "fishing expeditions" into jurisdictional facts are strongly disfavored by the federal courts. *See, e.g., Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 216 n. 3 (4th Cir. 2002) (holding that a court can properly deny a discovery request if "the plaintiff simply wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction."); *see also Papst v. Konica-Minolta Photo Imaging, Inc.*, 590 F. Supp. 2d 94, 101 (D.D.C. 2008). The Court should wisely exercise its discretion to disallow Plaintiff its fishing expedition.

## II. THE SUBPOENA SHOULD BE QUASHED BECAUSE IT VIOLATES DEFENDANT'S FIRST AMENDMENT RIGHT TO ANONYMOUS SPEECH.

Most importantly, the Court should quash Plaintiff's subpoena because it violates Defendant's First Amendment right to anonymous speech. The First Amendment applies because Defendant is alleged to have engaged in anonymous communication and Plaintiff's claims arise from those alleged activities. Given the paramount importance of Defendant's First Amendment rights, as well as the rights of the other John Does, it is essential that the Court take these rights into account before allowing Plaintiff to proceed with its fishing expedition.

### A. The First Amendment Protects Defendant's Right to Engage in Anonymous Speech.

The United States Supreme Court has consistently upheld the right to anonymous speech in a variety of contexts, noting that "[a]nonymity is a shield from the tyranny of the majority . . . [that] exemplifies the purpose [of the First Amendment] to protect unpopular individuals from retaliation . . . at the hand of an intolerant society." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995). This fundamental right enjoys the same protections whether the context for speech and association is an anonymous political leaflet, an Internet message board or a video-sharing site. *Reno v. ACLU*, 521 U.S. 844, 870 (1997) (holding that there is "no basis for qualifying the level of First Amendment scrutiny that should be applied to" the Internet); *see also, e.g., Doe v. 2themart.com*, 140 F. Supp. 2d 1088, 1092 (W.D. Wash. 2001) (stating that the Internet promotes the "free exchange of ideas" because people can easily engage in such exchanges anonymously).

First Amendment protection extends to the anonymous publication of expressive works on the Internet, even if the publication is alleged to infringe copyrights. *See Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004) ("The use of P2P file copying networks to download, distribute or make sound recordings available qualifies as speech entitled to First Amendment protection."); *see also, e.g., In re Verizon Internet Servs. Inc.*, 257 F. Supp. 2d 244, 260 (D.D.C. 2003), *rev'd on other grounds*, 351 F.3d 1229 (D.C. Cir. 2003); *Interscope Records v. Does*, 558 F. Supp. 2d 1176, 1178 (D. Kan. 2008). In *Sony*, the court concluded that a file sharer is "making a statement" by downloading a work without

7

charge or license. 326 F. Supp. 2d at 564. In addition, a file sharer is expressing himself by selecting and sharing particular content. *Id*. Therefore, a file sharer is entitled to "some level of First Amendment protection." *Id*.

Because the First Amendment protects anonymous speech and association, efforts to use the power of the courts to pierce anonymity are subject to a qualified privilege. A court order, even if granted to a private party, is state action and therefore subject to the limitations imposed by the First Amendment. *See, e.g., New York Times v. Sullivan*, 376 U.S. 254, 265 (1964). Just as in other cases in which litigants seek information that may be privileged, courts must consider the privilege before authorizing discovery. *See, e.g., Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987) (citing *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977)) ("[W]hen the subject of a discovery order claims a First Amendment privilege not to disclose certain information, the trial court must conduct a balancing test before ordering disclosure."). A subpoena must be quashed if it requires the disclosure of privileged information. Fed. R. Civ. P. 45(c)(3) ("On timely motion, the issuing court must quash or modify a subpoena that: . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies").

Only a compelling government interest can overcome such First Amendment rights, and the mere filing of a lawsuit does not make the identification of a defendant a compelling interest unless there is good reason to believe that the suit has a legitimate basis. The identification of an anonymous speaker is a form of relief to the plaintiff (because it can enable extra-judicial self-help such as that seen in these mass lawsuits), and it harms the anonymous defendant, who cannot recover his right of anonymous expression. Relief – an order that both benefits the plaintiff and hurts the defendant – is not customarily given without some proof of wrongdoing.

Of course, the constitutional privilege to remain anonymous is not absolute. Plaintiffs may properly seek information necessary to pursue meritorious litigation. Accordingly, courts evaluating attempts to unmask anonymous speakers have adopted standards that balance one person's right to speak anonymously with a litigant's legitimate need to pursue a claim. In reaching this balance, courts from many jurisdictions rely on the seminal case of *Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756 (N.J. App. Div. 2001). Under *Dendrite*,

a plaintiff must:

>  1) make reasonable efforts to notify the accused Internet user of the pendency of the identification proceeding and explain how to present a defense;
>
>  2) set forth the exact actions of each Doe defendant that constitute actionable cause;
>
>  3) allege all elements of the cause of action and introduce prima facie evidence for each Doe defendant sufficient to survive a motion for summary judgment; and
>
>  4) "balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed."

*Dendrite*, 775 A.2d at 760-61.

Alternately, courts have applied a less stringent test set forth in *Sony Music Entm't, Inc. v. Does 1-40*:

> The Sony test calls for the court to assess whether the plaintiffs' need for identifying information outweighs the putative defendants' right to First Amendment anonymity by balancing: (1) the concreteness of the plaintiffs' showing of a prima facie claim of actionable harm; (2) the specificity of the plaintiffs' discovery request; (3) alternative means to get the information the plaintiffs seek; (4) the need for the information to advance the plaintiffs' claim; and (5) the objecting party's expectation of privacy.

*Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 351 (D.D.C. 2011) (citing *Sony*, 326 F. Supp. 2d at 564-65). Although this test has been used by this Court in the past, *see, e.g., id.; W. Coast Prods. v. Doe*, 275 F.R.D. 9, 13 (D.D.C. 2011), these precedents are not binding. The *Dendrite* test most accurately and cogently outlines Defendant's First Amendment rights and should be applied here.

### B. Plaintiff's Subpoena Cannot Survive the Dendrite Test.

Plaintiff's Subpoena fails the *Dendrite* test. First, Plaintiff has not provided sufficient prima facie evidence that any Defendant infringed Plaintiff's exclusive right to reproduce and distribute its copyrighted work. In its Complaint, Plaintiff conclusorily alleges that each of the John Doe Defendants distributed Plaintiff's work to others. In support of this allegation, Plaintiff offers only a list of internet protocol ("IP") addresses, listed by internet service

provider ("ISP") and dates upon which infringing activity was allegedly observed. Plaintiff neither identifies the person or persons who observed the alleged infringing activity, nor explains how the alleged infringing activity was observed. Plaintiff does not meet its prima facie burden with this meager showing.

The information Plaintiff has provided regarding the IP addresses of the John Does is not sufficient prima facie evidence to link Defendants to the alleged acts of copyright infringement. As one court noted, a person's IP address could be falsely identified for a number of reasons:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed. . . . Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants.

*BMG Music v. Does 1-203*, 2004 U.S. Dist. LEXIS 8457, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants).

Instead of the conclusory showing made to date, Plaintiff must present verifiable evidence for each Defendant. At minimum, Plaintiff must present "competent evidence" that would permit Defendants (and the Court) to evaluate reliability and completeness of Defendants' investigative process, such as affidavits of the persons who allegedly observed the John Does' IP addresses and screen shots showing the operation of the software used to identify the IP addresses of the John Does. This information should be available to the Plaintiff, so providing it as part of its prima facie showing would not be unduly burdensome. *See Dendrite*, 775 A.2d at 772.

Moreover, requiring this showing would be reasonable and consistent with the requirements set forth by other courts in similar file sharing cases. Those courts have found the prima facie burden met with the submission of screenshots showing the IP addresses of each John Doe Defendant (so the court can see that the submitted IP addresses match those discovered during the investigation), copies or real-time capture of the technologies used, proof that the downloaded movie matched Plaintiff's original film, and shots of the server logs to which the Plaintiff claims to have had access. *See, e.g., Elektra Entm't Group, Inc. v. Does 1-9*,

10

2004 U.S. Dist. LEXIS 23560, 2004 WL 2095581, *4 (S.D.N.Y. Sept. 7, 2004). Without such evidence, the Court must simply accept Plaintiffs' word that the John Does identified by the Plaintiffs' Complaint have engaged in copyright infringement.

Further, under *Dendrite*, even if the other requirements are satisfied, the Court must still "balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed," *Dendrite*, 775 A.2d at 760-61. Producers of adult content are entitled to the same legal redress as other copyright holders, but the nature of the material in question necessarily amplifies the risk of reputational harm resulting from a mistaken identification.

### C. Plaintiff's Subpoena Cannot Survive the *Sony* Test.

Plaintiff's Subpoena also fails the *Sony* test. First, for the same reasons argued more fully above with regards to the *Dendrite* test, Plaintiff's allegations of copyright infringement are conclusory and do not establish a concrete showing of copyright infringement. In support of its allegations, Plaintiff offers only a list of internet protocol ("IP") addresses, listed by internet service provider ("ISP") and dates upon which infringing activity was allegedly observed. Plaintiff neither identifies the person or persons who observed the alleged infringing activity, nor explains how the alleged infringing activity was observed. Plaintiff does not provide any verification of how these results were obtained. Plaintiff's allegations should be supported by an affidavit verifying the accuracy of the technology used to monitor the John Does' IP addresses. *See Call of the Wild Movie, LLC*, 770 F. Supp. 2d at 351 ("The plaintiffs support these allegations by supplying the date and time that the alleged infringement occurred, along with affidavits from Messrs. Benjamin Perino and Patrick Achache describing the process by which the defendants' infringement was observed, recorded, and verified."). Here, Plaintiff's utter lack of any such verification renders its allegations of copyright infringement insufficiently concrete to outweigh Defendant's First Amendment right to anonymity.

Additionally, the Court must weigh Plaintiff's need for this information against Defendant's expectation of privacy. *Sony*, 326 F. Supp. 2d at 564-65. While in other file-sharing contexts this expectation of privacy has been deemed "minimal," *Call of the Wild Movie, LLC*, 770 F. Supp. 2d at 353, this case is distinguishable based upon the nature of the

11

work allegedly involved. The embarrassment of an allegation of downloading pornography can lead defendants to settle a case, even one without merit, once their identities are revealed, rather than face a lengthy court battle. Given the harm that can come to Defendant's reputation from a false accusation of illegally downloading pornography, the Court should require a stronger prima facie showing of copyright infringement.

Given the myriad procedural problems outlined above, and the lack of reliability or transparency about the means by which the Plaintiff generated its list of "infringers," the Court should act to protect Defendant's First Amendment rights and stop this fishing expedition.

### III. JOHN DOES 2-31 SHOULD BE SEVERED FOR MISJOINDER.

John Does 2-31 should be severed from this action for misjoinder. Parties may be joined in one action as defendants if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). This requires that claims be "logically related." *Disparte v. Corporate Exec. Bd.*, 223 F.R.D. 7, 10 (D.D.C. 2004). The remedy for misjoinder of claims is severance. Fed. R. Civ. P. 21; *Call of the Wild Movie, LLC*, 770 F. Supp. 2d at 342. "[I]t is well-settled that parties are misjoined when the preconditions of permissive joinder set forth in Rule 20(a) have not been satisfied." *Disparte*, 223 F.R.D. at 12. (internal citations omitted).

This Court has in the past denied to sever defendants from similar BitTorrent cases. See *Call of the Wild Movie, LLC*, 770 F. Supp. 2d at 346. However, this precedent is not binding.[5] Plaintiff urges the Court to consider the approach of other district courts, which have severed hundreds of defendants from similar downloading litigation. *See, e.g., Elektra*

---

[5] Due to the nature of this type of litigation, cases are usually settled once the defendants' identities are revealed. Because appellate decisions are rare, district courts around the country have reached different results.

*Entertainment Group, Inc.*, 2004 U.S. Dist. LEXIS 23560, 2004 WL 2095581 (severing Doe #7); *Interscope Records v. Does 1-25*, No. 4-CV-197, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004) (severing Does 2-25); *Pacific Century International LTD v. Does 1-101*, 2011 U.S. Dist. LEXIS 73837 (N.D. Cal. July 8, 2011) (severed does 2-101); *IO Group, Inc. v. Does 1-435*, 2011 U.S. Dist. LEXIS 73837 (N.D. Cal. July 8, 2011) (severed does 2-435); *Diabolic Video Productions, Inc v. Does 1-2099*, 2011 U.S. Dist. LEXIS 58351; Copy. L. Rep. (CCH) P30,093 (N.D. Cal. May 31, 2011) (severed Does 2-2099); *Digital Sin, Inc. v. Doe*, 2011 U.S. Dist. LEXIS 128033 (N.D. Cal. Nov. 4, 2011) (dismissed Does 2-5698). As one court held, "merely committing the same type of violation in the same way does not link defendants together for purposes of joinder." *LaFace Records, LLC v. Does 1-38*, 2008 WL 544992, *2 (E.D.N.C. Feb. 27, 2008) (severing lawsuit against 38 defendants where each defendant used the same ISP and similar peer-to-peer networks). *See also BMG Music v. Does 1-203*, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants).

It has been argued by copyright plaintiffs and held by some courts that the BitTorrent protocol's nature makes separate acts of infringement a logically connected series of transactions or occurrences. *See Call of the Wild Movie, LLC*, 770 F. Supp. 2d at 343 (because "the BitTorrent file-sharing protocol makes every downloader also an uploader of the illegally transferred file(s)' . . . the plaintiffs' claims against the defendants are logically related"). However, this is not necessarily true: Plaintiff has alleged only that Defendants copied a movie. Plaintiff does not allege that Defendants shared the exact same file from the same source (indeed, Plaintiff does not include any details, such as file size, that would allow such an inference to be drawn from its list of IP addresses). As one court noted:

> BitTorrent users may upload different initial files of a given work, which results in the creation of distinct swarms. *See* Lin Ye et al., *A Measurement Study on BitTorrent System*, 3 Int'l J. Comm, Network & Sys. Sci 916, 916 (2000); *see also* Ankur Patel, Comment, *BitTorrent Beware: Legitimizing BitTorrent Against Secondary Copyright Liability*, 10 Appalachian J.L. 117, 119 (2011). . . . a second initial "seeder" may not enjoy television shows in low definition and instead decide to upload a high definition file of the same episode for distribution. Notably, because of the differences between the first, low definition file and the second, high definition file, the participants in the first swarm would not interact with those in the second swarm. . . That BitTorrent users have downloaded the same copyrighted work does not, therefore, evidence that they have acted together to obtain it.

13

*Pacific Century International LTD v. Does 1-101* 2011, U.S. Dist. LEXIS 73837 at *12-13. Plaintiff has not provided sufficient evidence that Defendants were indeed part of the same BitTorrent "swarm," sharing the same file, and has therefore not shown that Defendants' alleged conduct was logically related to merit joinder.

Joining defendants together in one action merely allows Plaintiff's counsel to extract settlements from a maximum number of individuals while paying a minimum amount of filing fees:

> [I]f the 300 unnamed defendants have in fact infringed any copyrights (something that this court will assume to be the case, given the Complaint's allegations that so state), each of those infringements was separate and apart from the others. No predicate has been shown for thus combining 300 separate actions on the cheap – if CP had sued the 300 claimed infringers separately for their discrete infringements, the filing fees alone would have aggregated $105,000 rather than $350.

*CP Productions, Inc. v. Does 1-300*, 2011 U.S. Dist. LEXIS 113013, *2-3 (N.D. Ill. February 24, 2011). Joining hundreds of BitTorrent users in one lawsuit does not further the interests of justice, but rather only the interests of the copyright plaintiffs and attorneys who file them. The Court should dismiss Does 2-31 and require that separate filing fees be paid to re-file each case.[6]

## CONCLUSION

For the reasons stated above, Defendant requests that this Court quash Plaintiff's subpoena and sever John Does 2-31 from this action.

Dated: Mar 6, 2012

Respectfully submitted,
*s/John Doe*
John Doe
*Pro se*

---

[6] It should be noted that Plaintiff's Complaint does not even identify the John Does by their respective numbers, so it is unclear which IP address corresponds to John Doe #1, John Doe #2, etc.

14

Civil Action No. 11-CV-0299-BAH

Defendant:

John Doe c/o

La Chenna Cromer

11417 Honeysuckle Court

Upper Marlboro, MD 20774